**[J-40A-2024, J-40B-2024 and J-40C-2024]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 90 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court at No. 700 EDA |
| | : | 2022, entered on February 1, 2023, |
| v. | : | Affirming and Remanding the |
| | : | Judgment of Sentence of the |
| | : | Montgomery County Court of |
| JASON ANDREW LEAR, | : | Common Pleas, Criminal Division, at |
| | : | No. CP-46-CR-0002239-2020 |
| Appellee | : | entered on February 16, 2022. |
| | : | |
| | : | ARGUED:  May 15, 2024 |
| | | |
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 91 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court at No. 701 EDA |
| | : | 2022, entered on February 1, 2023, |
| v. | : | Affirming and Remanding the |
| | : | Judgment of Sentence of the |
| | : | Montgomery County Court of |
| JASON ANDREW LEAR, | : | Common Pleas, Criminal Division, at |
| | : | No. CP-46-CR-0002816-2020 |
| Appellee | : | entered on February 16, 2022. |
| | : | |
| | : | ARGUED:  May 15, 2024 |
| | | |
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 92 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court at No. 702 EDA |
| | : | 2022, entered on February 1, 2023, |
| v. | : | Affirming and Remanding the |
| | : | Judgment of Sentence of the |
| | : | Montgomery County Court of |
| JASON ANDREW LEAR, | : | Common Pleas, Criminal Division, at |
| | : | |

**OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED: October 24, 2024**

We granted review to determine whether Pennsylvania Rule of Criminal Procedure 600 requires the Commonwealth to demonstrate it acted with due diligence while criminal trials were suspended during a judicial emergency caused by the COVID-19 pandemic.[1]

---

[1] Rule 600 provides in relevant part:

**(A) Commencement of Trial; Time for Trial**

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

* * *

**(C) Computation of Time**

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

* * *

**(D) Remedies**

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that (continued…)

The Superior Court, relying on *Commonwealth v. Harth*, 252 A.3d 600 (Pa. 2021), held Rule 600 requires such proof, and remanded the case to the trial court for a hearing to determine whether the Commonwealth acted with due diligence. For the reasons that follow, we now reverse.

On March 16, 2020, in response to the COVID-19 pandemic, this Court authorized president judges to declare judicial emergencies and suspend Rule 600 in their respective judicial districts. *See In re: General Statewide Judicial Emergency*, 228 A.3d 1281, 1281-82 (Pa. 2020) (*per curiam*) (*Statewide Emergency I*).[2] The same day, the President Judge of Montgomery County (hereinafter referred to as "MontCo PJ") declared a local judicial emergency and, among other things, ordered Rule 600 suspended during the period of the local judicial emergency; additional orders extended the judicial emergency until May 31, 2020. *See* President Judge Declaration, 3/16/2020 (Original Emergency Declaration). On May 5, 2020, however, MontCo PJ entered an order rescinding his previous orders effective May 31, 2020. *See* President Judge Order, 5/5/2020.[3] On May 28, 2020, MontCo PJ declared the judicial emergency extended until further order of the court. *See* President Judge Declaration, 5/28/2020. Finally, on June 3, 2020, MontCO PJ filed an order noting that the judicial emergency had been extended by filings dated

the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600.

[2] The Court subsequently ordered a statewide Rule 600 suspension that lasted through June 1, 2020. *See In re: General Statewide Judicial Emergency*, 230 A.3d 1015, 1019 (Pa. 2020) (*per curiam*) (*Statewide Emergency II*).

[3] The parties dispute whether Montgomery County's May 5th order rescinded the original emergency declaration or only the emergency orders that followed the original emergency declaration. As we resolve this case based on the text of Rule 600, we do not need to decide this question.

March 31, 2020, April 14, 2020, and May 28, 2020, and ordered "that any postponement of criminal case scheduling caused by the declaration of this judicial emergency, from March 12, 2020 through the expiration of the judicial emergency, shall be considered a court postponement and shall constitute excludable time for purposes of the application of [Rule 600]." President Judge Order, 6/3/2020.

The Montgomery County Court of Common Pleas reopened in various stages. Court facilities reopened on June 1, 2020, but with limited in-person hearings. *See* Montgomery County Phase II Reopening Statement at 1, https://montgomerycountypa.gov/Archive/ViewFile/Item/5215 (last visited Oct. 21, 2024). Phase II began on July 20, 2020, but the only criminal hearings held in person were for violations of probation and parole, summary criminal appeals, and arraignments. *See id*. at 5-7. Civil cases also remained on hold at this time. *See id*. at 7. However, custody proceedings in the court's family division began to be held in-person to "provide stability for those children who are affected by the uncertainty caused by custody litigation." *Id*. at 3-4. Phase III was implemented on October 5, 2020, and brought about the initiation of non-jury criminal, non-jury civil, and juvenile delinquency trials. *See* Montgomery County Phase III Reopening Statement, https://www.montgomerycountypa.gov/ArchiveCenter/ViewFile/Item/5274 (last visited Oct. 21, 2024). The protocols adopted by the Court, however, required pending criminal cases to first proceed to a triage conference to determine whether a plea agreement could be reached or if the parties would agree to proceed to a bench trial, as the court was still not prepared to conduct jury trials. *See* Montgomery County Criminal Bench Trials Protocol at 1, https://www.montgomerycountypa.gov/ArchiveCenter/ViewFile/Item/5272 (last visited Oct. 21, 2024). These conferences were only held at a rate of twelve per day. *See id*.

On June 21, 2021, this Court ordered the Unified Judicial System to return to pre-pandemic status, fully opening courthouses and other judicial facilities. *See* Order, *In re: General Statewide Judicial Emergency*, No. 553 Judicial Administration Docket (Pa. filed June 21, 2021) (*per curiam*). However, the order also allowed local judicial emergencies to remain in effect until August 31, 2021, if such emergencies suspended Rule 600. *See id*.

Meanwhile, criminal complaints were filed against appellee Jason Andrew Lear on May 19, June 8, and July 17, 2020, in connection with the thefts of snowplowing equipment and an incident in which he threw a bicycle at a police officer. These matters sat in abeyance during the various phases of the Montgomery County Court of Common Pleas' reopening. Finally, on June 22, 2021, Lear's triage conference was scheduled for August 10, 2021. At the conference, Lear requested a bench trial. Thereafter, the trial court ordered trial to begin on November 1, 2021, 531 days after the Commonwealth filed its first complaint against him, 511 days after the second complaint was filed, and 472 after the third complaint was filed. On October 21, 2021, Lear filed a motion to dismiss pursuant to Rule 600(D)(1). The court heard argument on the Rule 600 motion on the day of trial and denied the motion, concluding "the delay in trying this case is a direct result of the judicial emergency and in accordance with Judge DelRicci's order as the President Judge[.]" N.T., 11/1/21 at 8. As the court further explained, "the earliest date for the cessation of the Rule 600 suspension was when the first criminal jury trial resumed in this judicial district, at which time Montgomery County court leaders determined jury trials were safe to resume. The first open date for criminal jury trials was July 12, 2021. Computing the time between the resumption of jury trials and the bench trial for [Lear] would still place the trial comfortably within the 365 non-excludable days. Therefore, the

Commonwealth did not delay in bringing this case to trial[.]" Trial Court Opinion, 4/15/2022, at 18.

Following the nonjury trial, Lear was convicted of aggravated assault, theft by unlawful taking, and related offenses, and sentenced to five to twelve years' imprisonment. Lear's post-sentence motion was denied, and he appealed to the Superior Court.

In a unanimous published opinion, a three-judge panel of the Superior Court vacated the judgment of sentence, reversed the trial court's decision denying Lear's Rule 600 motion, and remanded for a hearing under Rule 600(D). *Commonwealth v. Lear*, 290 A.3d 709 (Pa. Super. 2023). The panel stated: "Lear argues that although Montgomery County declared a judicial emergency, the delay in his cases was not excludable when it was feasible to hold trial, noting that other court divisions and other counties held trials while his case was pending." *Id*. at 718. The panel then quoted the text of Rule 600 and explained the Rule 600 analysis begins with determining the "mechanical run date," which is 365 days after the criminal complaint was filed. *Id*. The panel further explained that then the "adjusted run date" must be calculated by adding any time that is excludable from the computation under Rule 600(C)(1), and a case is properly dismissed under Rule 600 if it is not brought to trial by the adjusted run date. *Id.* at 718-19.

According to the panel, two cases guided its analysis: *Harth* and *Commonwealth v. Carl*, 276 A.3d 743 (Pa. Super. 2022). The *Harth* Court held "before a trial court excludes time from its Rule 600 time computation on the basis of 'judicial delay,'" the Commonwealth must "demonstrate that it acted with due diligence," *Harth*, 252 A.3d at 617, while in *Carl*, the Superior Court noted that any period during which Rule 600 was suspended should be excluded and added to the adjusted run date regardless of the

Commonwealth's diligence, *Carl*, 276 A.3d at 751. Based on *Harth* and *Carl*, the panel held: "If an order unambiguously suspends Rule 600 without qualification, then the period of the suspension is added to the [adjusted] run date without considering the Commonwealth's diligence. Alternatively, if an order characterizes a delay as a court postponement, then that period is only excluded if the trial court determines after a hearing that the Commonwealth exercised due diligence through the life of the case." *Lear*, 290 A.3d at 719 (internal citations omitted).

The panel then examined the COVID-19 emergency orders entered in Montgomery County, and based its ultimate decision on its interpretation of them. Initially, the panel rejected Lear's argument the county was actually able to hold jury trials during the relevant period, like other counties did, because this Court expressly authorized president judges to suspend Rule 600. *See id*. at 720, *citing Statewide Emergency I*, 228 A.3d at 1282. Nevertheless, the panel determined "the plain language of the orders reflects that Montgomery County did not continue its unqualified suspension of Rule 600 beyond May 31, 2020" because the May 5th order rescinded all previous orders and "[t]here were no later orders suspending Rule 600." *Id*. The panel concluded "Montgomery County opted to order on June 3, 2020, that any emergency-related delay 'shall be considered a court postponement and shall constitute excludable time' under Rule 600(C)." *Id*., *quoting* President Judge Order, 6/3/2020.

Finding no order suspending Rule 600 after May 31, 2020, the panel directed the trial court on remand to determine whether the Commonwealth exercised due diligence for any period of judicial delay occurring between June 3, 2020 and August 31, 2021. *See id*. The panel directed that the case be dismissed if the Commonwealth does not meet its burden. *See id*. The panel denied the Commonwealth's application for reconsideration.

We granted review to consider the following question as phrased by the Commonwealth:

> Whether a court must assess the Commonwealth's due diligence during a worldwide pandemic for purposes of Rule 600 before it excludes delay attributable to a local judicial emergency during which the president judge cancelled and suspended all trials, suspended Rule 600 and otherwise excluded judicial delay caused by the judicial emergency, and implemented strict procedures to protect the public?

*Commonwealth v. Lear*, 305 A.3d 541 (Pa. 2023) (*per curiam*). We generally review Rule 600 decisions for an abuse of discretion, but our review is plenary where "the dispositive question implicates legal issues[.]" *Harth*, 252 A.3d at 614 n.13.

First, we recognize the Commonwealth and Lear have different opinions on how the emergency orders below should be interpreted, specifically, whether MontCo PJ's unqualified suspension of Rule 600 ended on June 3, 2020 or remained in effect until August 31, 2021. However, as stated above, we need not decide this particular dispute because we may resolve the present appeal based on the plain text of Rule 600 and the fact that criminal jury trials in Montgomery County were judicially suspended from the dates the criminal complaints against Lear were filed until July 12, 2021.[4]

Regarding the appropriate application of Rule 600, the Commonwealth argues neither this Court's holding in *Harth* nor the text of Rule 600 requires a court to assess the Commonwealth's diligence before excluding delay caused by a pandemic and the related judicial emergency. *See* Commonwealth's Brief at 25. The Commonwealth contends the panel below "erred when it used the 'judicial delay' framework that applies to an individual judge's congested court calendar to analyze delay caused by a worldwide

---

[4] Although Lear was ultimately tried in a bench trial, he did not waive his constitutional right to a jury trial until the triage conference on August 10, 2021. *See* Trial Court Opinion, 4/15/2022, at 17 ("A review of the docket confirms that at a pre-trial conference on August 10, 2021, [Lear] requested a bench trial[.]").

pandemic[.]" *Id*. The Commonwealth claims the judicial delay framework used in *Harth* is inapt, and instead, the time at issue here "should have been excluded as an 'other period of delay' or delay not caused by the Commonwealth, which is excludable under the rule without a diligence inquiry." *Id*., *quoting* Pa.R.Crim.P 600(C).

Although the Commonwealth acknowledges *Harth* memorialized an exception to the general rule excluding delay not caused by the Commonwealth where judicial delay is involved, it argues judicial delay should be limited to "delay caused by an individual judge and that particular judge's congested calendar or other scheduling issues." *Id*. at 26. Put simply, the Commonwealth contends "a worldwide pandemic that leads to statewide disaster emergency declarations and the local declaration of a judicial emergency is not the same as a single judge's 'congested calendar' or 'other scheduling problems' considered in *Harth*." *Id*. at 27. According to the Commonwealth, the reason for this dichotomy is simple: even if "the lower court [had] been available in *Harth*, trial could not have commenced because the Commonwealth never met its discovery obligations" and the Commonwealth "cannot benefit from the trial judge's congested court calendar"; but here, "Montgomery County did not have a jury trial calendar or any jury trials scheduled from March 12, 2020 to July 12, 2021." *Id*. at 29-30.

The Commonwealth contends there is no need to force this type of pandemic-related delay into the *Harth* judicial delay framework because the text of Rule 600 "expressly provides for the exclusion of delays that do not fit within that framework, explaining that '[a]ny other periods of delay shall be excluded from the computation.'" *Id*. at 31, *quoting* Pa.R.Crim.P. 600(C). Further, the Commonwealth notes this Court has recognized as much post-*Harth* by stating, "where delay is not caused by the Commonwealth . . ., it must be excluded from the computation of the Rule 600 deadline."

*Id*., *quoting Commonwealth v. Johnson*, 289 A.3d 959, 982 (Pa. 2023).[5] The Commonwealth again emphasizes that "[t]his case involves an unexpected pandemic that created chaos across the world and upended the day-to-day operations of the courthouse[,] . . . [t]he Commonwealth did not cause the pandemic, and it had no control over the judicial emergency response to COVID-19." *Id*. As such, the Commonwealth contends "this delay is excludable under the text of the rule as 'any other periods of delay.'" *Id*., *quoting* Pa.R.Crim.P. 600(C).[6]

In response, Lear argues the panel below correctly interpreted *Harth* as applying to all types of judicial delay, including emergency-related court closures that affect every judge in a particular county. *See* Appellee's Brief at 33-34. Lear points out that *Harth* itself concerned emergency-type judicial delays caused by the September 2015 Papal Visit to Philadelphia. *See id*. at 34. Lear claims *Harth* "explicitly rejected the notion that judicial delay could create an extended period where no examination of due diligence was warranted[,]" based on the following language:

---

[5] The Pennsylvania District Attorneys Association (PDAA) filed an *amicus curiae* brief in support of the Commonwealth in which it agrees with the Commonwealth that the present case is distinguishable from *Harth*. *See* PDAA Brief at 11-12. PDAA observes that "[t]he purpose of Rule 600 is two-fold, it protects a defendant's speedy trial rights and seeks to protect the interest of society/the Commonwealth in prosecuting crime[,]" and requiring the Commonwealth to prove its diligence after it relied on orders suspending Rule 600 "completely ignores the dual purpose of Rule 600[.]" *Id*. at 12.

[6] The Commonwealth also summarizes numerous Superior Court cases holding COVID-19 delay as excludable without consideration of the Commonwealth's diligence to stress that the decision below is an outlier that conflicts with numerous other Superior Court decisions. *See* Commonwealth's Brief at 32-40, *citing Commonwealth v. Faison*, 297 A.3d 810 (Pa. Super. 2023); *Carl*, 276 A.3d at 751; *Commonwealth v. Feazell*, 1488 MDA 2021, 2022 WL 3349335 (Pa. Super., Aug. 15, 2022) (unpublished memorandum); *Commonwealth v. Fitzpatrick*, 1489 MDA 2021, 2023 WL 2566440 (Pa. Super., Mar. 20, 2023) (unpublished memorandum); *Commonwealth v. Carbaugh*, 410 MDA 2022, 2022 WL 17348880 (Pa. Super., Dec. 1, 2022) (unpublished memorandum); *Commonwealth v. McDonald*, 218 MDA 2022, 2023 WL 7481625 (Pa. Super., Nov. 13, 2023) (unpublished memorandum).

> We do not suggest that the Commonwealth must be prepared to proceed to trial the moment that a criminal case is initiated; rather, the Commonwealth must utilize that year to prepare itself for trial, as is required under Rule 600(A). We have not altered that timeline, but, instead, seek merely to ensure that the Commonwealth does not summarily rely upon the judiciary as an excuse to forego preparation for pending criminal cases, consistent with the language and purpose of Rule 600. Indeed, under the dissent's approach, were the judiciary unable to proceed with a trial within the first year after a case was initiated, the Commonwealth could do nothing during that delay, and then take **another year** to prepare its case.

*Id*. at 34-35, *quoting Harth*, 252 A.3d at 618 n.15 (emphasis in original).

Lear also contends the Commonwealth's reliance on *Johnson* is misplaced as this Court in that case specifically stated, "judicial delay is delay caused by the court, rather than the Commonwealth, and is likewise excludable if the Commonwealth exercised diligence during that time." *Id*. at 35, *quoting Johnson*, 289 A.3d at 982. Lear claims the Commonwealth's approach to *Harth* is unworkable as it would "create[ ] a morass in which lower courts must determine whether *Harth*'s two-step framework applies or whether the cause of judicial delay must be first examined." *Id*. at 36. According to Lear, this would "invite[ ] a never-ending stream of factual scenarios through which lower courts would need to navigate in an effort to apply the proper standard." *Id*. In Lear's view, "[t]here is simply no reason why [the *Harth*] analysis cannot be extended to an assessment . . . of the Commonwealth's due diligence during the post-June 1, 2020 pandemic period." *Id*. For all these reasons, Lear asserts the Superior Court properly remanded his case for the trial court to assess the Commonwealth's due diligence. *See id*. at 40-42.

In reply, the Commonwealth denies the standard it forwards is unworkable, as any emergency-related closure is obviously beyond the control of both the courts and the Commonwealth, and there is no reason to assess the Commonwealth's due diligence because trial could not possibly have occurred in any event. *See* Commonwealth's Reply

Brief at 22-23.  The Commonwealth insists that forcing it to prove due diligence during an emergency "flies in the face of the second purpose of Rule 600: protecting society's right to effective prosecution of criminal cases."  *Id*. at 23.

Rule 600 requires that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed."  Pa.R.Crim.P. 600(A)(2)(a).  To decide whether the rule was violated, "a court must first calculate the 'mechanical run date,' which is 365 days after the complaint was filed, and then must account for any 'excludable time[.]'"  *Johnson*, 289 A.3d at 981 (internal quotations and citation omitted).  Rule 600 explains the computation of time as follows: "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence.  Any other periods of delay shall be excluded from the computation."  Pa.R.Crim.P. 600(C)(1).

As this Court unanimously clarified post-*Harth*, the first sentence of Rule 600(C)(1) expresses the general rule: "Rule 600 establishes two requirements that must be met for delay to count toward the 365-day deadline: (1) the delay must be caused by the Commonwealth; **and** (2) the Commonwealth must have failed to exercise due diligence."  *Johnson*, 289 A.3d at 982 (emphasis added); *see id*. ("Put differently, where delay is not caused by the Commonwealth **or** delay caused by the Commonwealth is not the result of lack of diligence, it must be excluded from the computation of the Rule 600 deadline.") (emphasis added).  The second sentence of Rule 600(C)(1) then explains that "[a]ny other periods of delay" — meaning any periods of delay not caused by the Commonwealth or not resulting from the Commonwealth's lack of due diligence — are "exclud[able]" and are removed from the computation of the Rule 600 deadline.  Pa.R.Crim.P. 600(C)(1).  Once the "excludable time" is calculated, this time is added to the "mechanical run date"

to produce the "adjusted run date," which is the deadline for the Commonwealth to bring the defendant to trial under Rule 600. *See Johnson*, 289 A.3d at 981-83.[7]

*Harth* announced a limited exception to the general rule in certain cases involving "judicial delay." *See* 252 A.3d at 603 ("we find that a trial court may invoke 'judicial delay' in order to deny a defendant's Rule 600 motion to dismiss only after the Commonwealth has demonstrated that it complied with the due diligence requirements of Rule 600 at all relevant periods throughout the life of the case"). That case involved a number of dates where Harth's criminal trial was continued. Some continuances were explained in docket entries, such as those stemming from the 2015 Papal Visit to Philadelphia,[8] and the Commonwealth's refusal to sever Harth's case from that of his co-defendant, while others were seemingly unexplained. *See id*. at 603-05. However, the critical fact was that the

---

[7] The dissent insists we have "circumvent[ed] Rule 600's order of operations" and "misconstrue[d] Rule 600's analytical sequencing." Dissenting Opinion at 12, 14. But it is the dissent that reads the language of the rule out of order. Again, the pertinent computational provision provides that "periods of delay at any stage of the proceedings **caused by the Commonwealth** when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1) (emphasis added). Thus, "[t]he first thing that the Rule instructs courts to do, when determining whether time is excludable" is not, as the dissent claims, "an assessment of the Commonwealth's diligence[.]" Dissenting Opinion at 14. Rather, "the path expressly prescribed by the rule" is to first assess whether the Commonwealth caused the delay in question. *Id.* Moreover, we do not "disregard[] the possibility that it will be the Commonwealth's lack of due diligence that caused the delay." *Id.* (emphasis omitted). We simply recognize, in accordance with the plain text of the rule, that the causation analysis precedes the due diligence inquiry, and it is only when the Commonwealth both caused the delay and lacked due diligence that the delay is properly included in the Rule 600 calculation.

[8] Due to the Pope's visit, the courts of the First Judicial District in Philadelphia County were closed from 5 P.M. on September 22, 2015 to 9 A.M. on September 29, 2015. *See In re: Administrative Closure of the Courts and Offices of the First Judicial District of Pennsylvania September 23, 2015 to September 28, 2015* (Administrative Governing Board of the First Judicial District of Pennsylvania No 01 of 2015), https://www.courts.phila.gov/pdf/notices/2015/Papal-Visit-Operational-Changes-Notice.pdf (last visited Oct. 21, 2024).

Commonwealth failed to complete discovery on numerous occasions and even passed fifteen pieces of discovery on the morning scheduled for trial. *See id*. at 604-06, 622 ("the record here amply demonstrates that the Commonwealth failed to complete its discovery obligations through the date of trial"). Harth filed a Rule 600 motion, which was denied, and he appealed to the Superior Court after he was convicted and sentenced. The Superior Court ordered a remand to the trial court to conduct a hearing to clarify the record with respect to the cause of each continuance, the Commonwealth's readiness for trial, and the Commonwealth's due diligence or lack thereof. Harth petitioned this Court for allowance of appeal, and we granted review.

Harth requested that all the delay in his case be included in the Rule 600 calculation since the Commonwealth never completed discovery and was therefore not diligent in bringing the case to trial. More specifically, Harth asked this Court to adopt Justice Wecht's concurrence in *Commonwealth v. Mills*, 162 A.3d 323 (Pa. 2017), which argued that trial courts must assess the Commonwealth's diligence before labeling a continuance "judicial delay." *See Harth*, 252 A.3d at 610-11, *citing Mills*, 162 A.3d at 325-27 (Wecht, J., concurring). The Commonwealth, on the other hand, relied on the text of Rule 600(C)(1) to argue periods of delay caused by the trial judge's calendar should be excluded from the Rule 600 calculation. The Commonwealth observed, consistent with our explanation above, that Rule 600 provides two requirements before a period of delay may be included in the computation — (1) the Commonwealth caused the delay; and (2) the Commonwealth failed to exercise due diligence — and the first requirement is not met when the delay is caused by the trial judge's calendar rather than the Commonwealth.

In a sharply divided 4-3 decision, with this author writing for the dissenters, this Court held "a trial court may invoke 'judicial delay' in order to deny a defendant's Rule 600 motion to dismiss only after the Commonwealth has demonstrated that it complied

with the due diligence requirements of Rule 600 at all relevant periods throughout the life of the case." *Id.* at 603. The *Harth* majority reasoned that "requiring the Commonwealth to demonstrate that it acted with due diligence before a trial court excludes time from its Rule 600 time computation on the basis of 'judicial delay' comports with the language of Rule 600(C)(1) and its commentary, the purpose behind the rule, and our prior jurisprudence interpreting Rule 600 and its predecessor." *Id*. at 617. The Court then determined a remand was unnecessary as the Commonwealth had neglected to fulfill its discovery obligations without providing a reasonable explanation for this deficiency and, as a result, failed to prosecute Harth's case with due diligence. *See id*. at 621-22.

Although the facts of *Harth* involved other sorts of delays in addition to judicial delays, including delays due to the Papal Visit and the lack of severance, the Court's holding regarding the Commonwealth's due diligence obligation, which is what binds future decisions, was explicitly limited to "judicial delay." *Id*. at 603, 617. More precisely, though, it was about judicial delay in conjunction with other periods of delay **caused by the Commonwealth**. Delay actually occasioned by the Commonwealth was essential to the *Harth* majority's analysis, because without it, the second sentence of Rule 600(C)(1) would have controlled rather than the first. *See Johnson*, 289 A.3d at 982 ("judicial delay is delay caused by the court"); Pa.R.Crim.P. 600(C)(1) ("Any other periods of delay [not caused by the Commonwealth] shall be excluded from the computation."). In those limited circumstances, where the Commonwealth caused multiple periods of delay and attempted to excuse them by pointing to other periods of judicial delay, the *Harth* majority determined "a trial court must first determine whether the Commonwealth has met its obligation to act with due diligence throughout the life of the case; if the Commonwealth meets its burden of proving due diligence, only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the

defendant's motion." *Harth*, 252 A.3d at 618. In establishing this exception to the general rule, the *Harth* majority expressed that Rule 600(C)(1) is "not a model of clarity," hence its decision to turn to the Rule's "commentary, the purpose behind the rule, and our prior jurisprudence interpreting Rule 600 and its predecessor." *Id*. at 617.

Unlike *Harth,* this case does not involve judicial delay in conjunction with delay caused by the Commonwealth. In fact, it involves neither. Judicial delay is delay caused by an individual judge's "own congested calendar or other scheduling problems[.]" *Id.* at 618; *see also id.* at 619 ("trial courts must assess the Commonwealth's due diligence before relying upon their own scheduling difficulties and congested court calendars as justification for denying Rule 600 motions to dismiss"). Here, Lear's trial was not delayed because of the assigned trial judge's heavy caseload or because the judge had other scheduling conflicts or difficulties. Rather, trial was postponed because of a global pandemic, during which emergency orders completely closed the Montgomery County Courthouse for an extended period of time, with narrow exceptions not relevant here. *See* President Judge Emergency Order, 3/16/2020 at 1. When court reopened on a limited basis, proceedings involved stringent protocols that limited the kinds of hearings that could take place as well as the pace and volume of proceedings. *See* President Judge Order, 5/5/2020; Montgomery County Phase II Reopening Statement at 1, https://montgomerycountypa.gov/Archive/ViewFile/Item/5215 (last visited Oct. 21, 2024). Importantly, criminal jury trials were suspended entirely from March 12, 2020 (before the criminal complaints against Lear were filed) to July 12, 2021. Moreover, there was no hearing scheduled in Lear's criminal matters until August 10, 2021, already more than 365 days from when the Commonwealth filed each set of charges. These circumstances stand in stark contrast to the situation of a single judge unable to entertain a case because

of a scheduling problem, and so they are not properly characterized as "judicial delay" as envisioned by *Harth*.

Nor can it be seriously argued that the Commonwealth caused the delay from the filing of the complaints to the triage conference on August 10, 2021. This delay was necessitated by the COVID-19 pandemic and its concomitant emergency court closures and restrictive protocols, not anything the Commonwealth did or did not do. Likewise, the Commonwealth is not alleged to have caused any other periods of delay during the relevant timeframe.

In the absence of judicial delay in conjunction with some period of delay caused by the Commonwealth, the limited *Harth* exception does not apply. The general rule instead controls. Applying that rule here, we conclude that since the Commonwealth was not responsible for the suspension of all criminal jury trials or the protocols adopted in Montgomery County in response to the COVID-19 pandemic, the time period up until the August 10, 2021 conference is properly excluded from the Rule 600 computation as an "other period[ ] of delay." Pa.R.Crim.P. 600(C)(1). Moreover, because the matter proceeded to trial within three months on November 1, 2021, well before the adjusted run date expired, there was no violation of the Rule 600 deadline in this case.

There is good reason not to extend the narrow *Harth* exception, which itself constituted an expansive construction of the rule language providing that only delay "caused by the Commonwealth" should be included in the computation of time, to the COVID-19 delay here. Pa.R.Crim.P. 600(C)(1). Delay stemming from the unavailability of a single judge could conceivably be averted if the Commonwealth is ready to proceed, as the case could potentially be reassigned to a different judge. On the other hand, when a global pandemic precipitates a court-wide shutdown followed by a court-wide slowdown, delay is unavoidable irrespective of the Commonwealth's diligence. No amount of due

diligence on the part of the Commonwealth could have possibly hastened Lear's trial date. As such, we hold the delays caused by the COVID-19 pandemic-related emergency court closures and restrictive protocols do not fall under *Harth*'s limited exception but, instead, constitute "other periods of delay" for purposes of Rule 600.[9] And since the Commonwealth's diligence is never relevant to the Rule 600 analysis for "other periods of delay," we reverse the Superior Court's decision remanding this case to the trial court for a hearing to determine whether the Commonwealth acted with due diligence. Because we hold Rule 600 was not violated in this case, no hearing is necessary.[10]

Chief Justice Todd and Justices Mundy, Brobson and McCaffery join the opinion.

Justice Wecht files a dissenting opinion in which Justice Donohue joins.

---

[9] It is not hard to imagine other types of delays that fit neatly in this category. For example, medical-, weather-, and security-related emergencies often lead to court delays, by no fault of the Commonwealth. Such circumstances, like the COVID-19 pandemic, properly constitute "other periods of delay" under Rule 600(C)(1).

[10] As should be obvious, we do not endorse the approach taken by the Superior Court. Whereas the panel below crafted a rule for assessing the validity of Rule 600 suspension orders and then applied that rule to the suspension orders issued by the MontCo PJ, our analysis turns on Rule 600 itself. There is simply no need to parse the suspension orders given our conclusion that, even if Rule 600 was in effect at all relevant times, it was not violated in these circumstances.